Case No. 17-6383, U.S.A. v. Wesley Hamm and Case No. 18-5121, U.S.A. v. Robert Shields. Mr. Lyons, for the Defendant Appellant, you may proceed. May it please the Court, my name is Thomas Lyons and I represent Robert Shields Counsel. I would like to reserve one minute for rebuttal, Your Honor. Robert Shields is currently serving a life sentence following a trial where the jury was permitted to find him guilty of distribution resulting in death based on drugs sold by an alleged co-conspirator without any finding that he was part of a chain of distribution resulting in that death as required by this Court's decision in the United States v. Swiney. There are really three issues that I want to focus on. The first is whether there was sufficient evidence of a conspiracy because this was nothing more than a buyer-seller relationship. The second issue is that the jury instruction on the Pinkerton liability failed to include the Swiney rule for death results. Sentencing enhancement to apply under 841B1C, a co-conspirator must be part of the chain of distribution resulting in death and the jury must so find based on Alene and Apprendi. And the government argues critical facts not in evidence during their closing argument which linked Carfentanil to Shields, substantially prejudicing him in his right to a fair trial. With regard to the buyer-seller argument, it's fairly straightforward. What we have here is two purchases, one on August 22nd, one on August 24th. There was no previous relationship between Mr. Hamm who purchased the drugs and Mr. Shields who sold the drugs. The lady who actually distributed the drug that caused the overdose in this case is a lady named Ms. Myers who Mr. Shields had never met before. Under the Dietz decision, there are several factors that the courts look to in terms of buyer-seller argument. The length of the relationship, the established method of the payment, the extent to which the transactions are standardized and the level of mutual trust between the buyer and the seller. Here, the length of the relationship is extremely brief. We're only talking about three days and two transactions. There was no established method of payment because they hadn't had a relationship long enough to do so. And the extent to which the transactions were standardized, there was no real proof about standardized transactions that was submitted at the district court level. And the level of mutual trust. Can I just make sure that I understand structurally how you're saying this should work? Your position is first that Pinkerton is not applicable at all because there was insufficient evidence in the case, not because this is the way the system should operate now structurally. That's correct. Okay. And then you would take the procedures set out by Judge Sir Heinrich in Swiney, whatever, and that would be imported into the jury trial in this case because of Apprendi and other changes in the law. That's essentially correct, Your Honor. Okay. So with regard to the Swiney argument, I guess that's sort of the bulk of what we're— And so what would you do if Pinkerton does apply, but you've still got to deal with Swiney? Well, I think the way you would have to do that, Your Honor, is you'd have to tailor the Pinkerton instructions, which are fairly generic at this point. I mean, they're standardized. I think you would have to tailor the Pinkerton instruction to incorporate the language that's contained in Swiney because I think Swiney means what it actually says. Well, you know, so do I at this point. So, I mean, I'm with you on that, but I haven't quite figured out— I mean, Pinkerton is a longstanding doctrine within the law of conspiracy, and it's just a little problematic to figure out what you do. I don't know that it is that problematic because this is a special rule that's applying when you have a B1C enhancement for a death results case. So we would only be changing that portion of Pinkerton as it relates to these particular class of cases. It's not in general eliminating the Pinkerton instruction. Swiney works or Swiney becomes Pinkerton in the context of this kind of case. I think I understand that, yes. Well, I might not have said it right, but I hope I . . . I'm sorry. No, go on. I'm sorry. In the trial, did you talk to the district judge about Swiney and submit an alternate jury instruction that would have included something like what you think should have happened? Had I tried the case, I would have done so. Not grading you down personally, but did I read the transcript right that there isn't a specific proffer? There's not, Your Honor. I have to be candid that there was no proposed instruction that incorporated the Swiney language into, I guess, what would presumably be the Pinkerton aspect of the case. What are you saying preserved the issue then in the district court? What happened that would preserve the issue? Well, two things, and perhaps I'm stretching a touch. The first part was that they did object to any vicarious liability instruction being given. They objected to Pinkerton instruction being given. The judge overruled that instruction in a short opinion. And the second thing is that they argued in their Rule 29 conference that the chain of distribution should preclude conviction on counts 2 and 3 of this indictment. But normally saying something at a Rule 29 discussion doesn't preserve an instruction issue, does it? It doesn't, and let's assume for a second that we can't meet the preservation issue. So we're looking at it under harmless error. There's a case that's been decided back in 2013, United States v. Curlman. And in that case, they dealt with these alternative theories of liability for conviction, and the court said this. When a jury is instructed that it may convict on one of two legal theories, one erroneous and one proper, the possibility that it could choose to convict on the permissible theory does not necessarily save a general guilty verdict from reversal. Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to the law, and there is no reason to think that their own intelligence and expertise will save them from that error. Let me ask you about conviction or guilt standing alone versus enhancement. Suppose we agree with you on the swiney issue and we pass over the preservation. Do you get to go back and retry the whole case, or do you retry effectively the enhancement that you ask a jury, were these people who are conspirators in a direct chain of distribution? I'm assuming that the court is excluded. I mean, assuming that you lose on the other. On the buyer-seller. Right, buyer-seller, the overall Pinkerton issue. Yeah, assuming we lose on the buyer-seller argument, I think you do have to go back and try the entire case again, and you would just be submitting a more tailored Pinkerton instruction that incorporates the swiney rule. I mean, even though the swiney rule really doesn't have anything to do with whether the jury could have found distribution under, or not could have, had to find distribution either directly or under Pinkerton, because if they found distribution directly, then you lose outright. If they found it under Pinkerton, then the only thing that you got a bad mark on would be the direct chain of distribution. So why should they have to retry that? Because we don't know what they did. But, I mean, am I wrong when I say you're right, or you may be right that there are two possible theories, but the two theories are either a dead loser because of distribution directly, or what they were instructed on, which is Pinkerton. It's not the case with what the case you cite and those kind of cases are, one theory that's good and one theory that's clearly bad. What you've got here is one theory that's good and one theory that's even better for the government. Yeah, I think the problem with the court's construction there, though, is that the prosecutor in this particular case told the jury that it didn't even need to be concerned about the direct distribution issue. It basically told the jury that all of the stuff about other sources of supply that could have caused the death of Mr. Willoughby was irrelevant because of the Pinkerton instruction. And then they referred to facts that were actually not in evidence, including specific dates of samples that were taken from Tracy Myers on the 22nd and the 23rd and linked the carfentanil directly with the death of Mr. Willoughby and said that Sosa, which is the nickname for my client, Mr. Shields, was the one who supplied that carfentanil. Those facts were simply not in evidence. That was flagrant and improper. And so I think that answers your question, Your Honor, about why it would have to be retried in toto. My time appears to be up. Thank you, Your Honor. May it please the Court, I'm Michael Savio, appointed for Mr. Hamm. I'd like to reserve two minutes for rebuttal. May it please the Court, counsel, and all of our clerks. There are a lot of things in this case. I'd like to note in memento mori, Alan Kruger, a labor economist, who wrote about the issues of economic dislocation and opioid crisis in this country, I think set a context for the kind of problems we're facing here. I filed a very late 28J letter, which just really sort of amplifies the cases already cited. There was a unique note in there about the World Health Organization's report in 2017 about carfentanil, basically saying we don't know much about it, which I think explains why the testimony in this case seemed so ambiguous at times, because the medical experts, the pharmacological experts were having trouble saying what was going on with this case. If I'm dead in the water on a particular argument, just let me tell me and I'll move on. But with the Burridge issue, the testimony on direct and cross, I think, was very ambiguous about whether or not the but-for test was met from that testimony. However, and we did not note this in our brief when we came across it preparing for this, at the end of the medical examiner's testimony, Judge Reeves asked that question, and the medical expert said if he hadn't taken the carfentanil, he would not have died that day. This still moves on over to the key question under Apprendi-Allen-Burridge about the elements that have to be established by evidence and found by the jury. And the key here is, is carfentanil a Schedule II controlled substance, such that 21 U.S.C. 841 and its penalties can be applied? And the only testimony that seemed to even come close to that was through the leading questions of the prosecutor asking if it was a Schedule I substance. And I think the pharmacology fellow said, well, yeah, very likely rather. So he didn't really establish yes or no. It's very likely, but it's not a Schedule I substance. And when there was earlier testimony saying, well, the prosecutor's trying to lead him to say this is Schedule II, he kind of, you know, it's used by veterinarians. It shouldn't be used by humans. But that doesn't establish the fact for the jury that this is a Schedule II controlled substance. And under both Alain and Burridge, that is something that has to be proven. And it wasn't. The jury couldn't have found it because there was no testimony to that fact. The other issue we looked at was the nature of Mr. Ham's, at least in my limited experience, extraordinary cooperation once he found out that someone had died. The question then comes up in terms of Count III, has he not renounced his actions? Has he not withdrawn from this conspiracy? Because if we look at the instruction on withdrawal that the Sixth Circuit puts out, you know, you not only say I'm out of here, I've left this behind, but you begin to act to neutralize what you have done. And he immediately tried, he told them everything that had happened. Tracy Myers was arrested. He was arrested, and he began with them to do that extraordinary set of activities as an informant to go make a controlled buy to get Mr. Shields to take him off of the street. And this all happened several days before the incident where Tracy Myers is lodged in the jail and apparently was not fully searched, and then handed out the carfentanil to other inmates who then seized up and had to be treated to keep them alive. And how was it that Ham was arrested? I mean, did he go and turn himself in? No, I believe they were able to look at the decedent's phone, saw the communications back to Tracy Myers. They had previous information that Ms. Myers had been dealing narcotics, and I believe they may even have made a controlled buy from her. And so that's when they went there and they said, you know, they said, while we're here, search the house. Here, you can search my phone. And then Ham began to tell, yes, everything about where this had come from. So I'd say they were both arrested at the same time. But Ham began telling, you know, this is where it is. If you don't want to stop it and get it, this is the guy you can get it from. And they then, even the police remarked that this was exceptionally swift because they were possibly having to take him out of state to meet with Shields, but it turned out they just were able to meet up here in northern Kentucky and conducted it, they made the arrest, and then they began talking to Shields about his conduct. So the response to that from the government is, well, but the act of giving it to Ms. Myers occurred before all of this extraordinary activity. And since she then later in jail passed it out, that doesn't show that his withdrawal cuts off his liability. We, of course, disagree because at that point, he's doing every possible thing that is set out to both pull back from the conspiracy but to neutralize his actions that were part of the overt acts, the wrongful conduct in the conspiracy. I was just asking that because you sort of almost made it sound as though he had become remorseful and turned himself in. As I looked further, it looked to me as though they were arrested. Ham was arrested because he was with Myers and his wife. I mean, all three of them who'd been involved in the whole drug operation were all swept up together at the same time. Is that right? Yes, sir. I mean, I think that Myers was their suspect. I don't know that they knew at that time that she had gotten the product from him. I think all they found on his bedside was the laxative that I think he explained they used to cut this stuff. But, I mean, let me go back. He has this sort of extensive petty crime record, but he didn't even try and cut a deal saying, look, if I cooperate, can you help me? He just said, let me tell you how we can stop this stuff. Let me tell you where I got it from. Tell me what you need me to do so we can end this. I mean, one of the other aspects about this was this kind of almost Amway cooperative of these narcotics users. They all knew each other. He was friends with Myers since she was a kid. He was friends with the decedent since they were kids. It was a strange community. That's something that I've seen in other narcotics cases. So I do, in fact, believe he was remorseful. He was shocked at what had happened, and thus his extraordinary efforts to try and stop what he may have felt he was responsible for. Paralleling that under Pinkerton liability is also this notion of foreseeability. I don't know that anyone would have expected that Myers, after having been arrested and searched, would still have somehow managed to conceal on her person a series of these toxic doses, or that she would be able to make it through jail security with this, or that she would pass it out to other people. From a sentencing point of view, if we agree with you only on this part about count three and withdrawing, is that really going to help your client? If that were the only point that's raised that we agreed with. Yes, I'm trying to hit a home run on the controlled substance schedule two issue. Okay. Because count two would still be there. That's fair. I just wanted to make sure I understood it because there are a lot of moving parts, as we said. Okay, thank you. Thank you. Good afternoon. I may please the court. Francesca Valentini for the United States. I would like to begin with opposing counsel discussion of the Pinkerton instruction and the claim of instructional error. The most straightforward disposition of that claim is to affirm, because the defendants have failed to show any potential effect on their substantial rights. As the discussion just a minute ago with my friend on the other side revealed, it seems clear that plain error, that the objection that was interposed at trial was not sufficient to preserve the issue. Plain error applies. And the evidence in this case was overwhelming, that both Shields and Hamm were in the distribution chain that led to the distribution of the controlled substance, the use of which led to the death of LKW and the substantial bodily injuries of the three jailmates of Tracy Myers. If I can just quickly go over that evidence, there is no real dispute that in the afternoon of August 24th, Shields delivered a controlled substance that he identified or called fentanyl to Hamm. There is also no dispute that Hamm, later that day, delivered that controlled substance to Tracy Myers. And there is no dispute that later that day, Tracy Myers delivered what turned out to be carfentanil to LKW, who later assumed the substance in overwhelming evidence. And I can get into that evidence if Your Honors think it's appropriate or necessary. And there's overwhelming evidence that that substance caused the death of LKW. Now the only theory under which there could be a break in this distribution chain is that somehow Myers could have obtained this carfentanil from some other sources. But contemporaneous text messages. There's also the evidence that wasn't there initially some use by Hamm of the substance with no adverse effect on him and his wife? So Hamm's wife testified that they used the substance after they received it from Shields, but the jury was certainly entitled to not believe that evidence. Right, but you're saying it's plainly evident that we could find the use in the distribution chain. I'm trying to point out some evidence that might cut against that. I understand, Your Honor. And to the extent that there's less than two of evidence, on the other side I would point to the evidence, the videos that we have submitted to the court for the court's review in Exhibit 7. The videos of the other traveler who traveled with Hamm and his wife, Jenna Hamm, and did use the substance right after they obtained it from Shields and on the way back in the car from Cincinnati back to Mount Sterling. And I think Your Honors can observe the reaction. It's a toxic reaction. It's the reaction of someone who's going to overdose. Can I switch gears for you just a minute? I want to talk about this thing I talked with your adversary initially about just structure. You don't want to change the use of Pinkerton, right? With respect to Swiney, you want us to say it doesn't have anything to do here. Tell me precisely why you think Swiney doesn't have anything to do with this case. Absolutely. Your Honor, we believe this is a taxable application of Pinkerton. In 1946, the Supreme Court held that the co-conspirators are criminally liable. This isn't supposed to have anything to do with Pinkerton. The question I'm asking you relates to why we can't look to Swiney for the decisions to be made in this case. I understand how old Pinkerton is. I understand its broad application inside and outside drug cases. Just tell me why doesn't Swiney give us a problem here? Swiney was a case that dealt with the interpretation of a specific statutory provision. What if you've got a specific statutory provision that has to be interpreted within a case where Pinkerton liability might apply? The statutory provision that was interpreted in Swiney was the penalty provision applicable in cases where defendants are convicted of conspiracy charges. What's all the thing about Pinkerton? If the defendants here didn't have conspiracy charges, why would you even have been charging Pinkerton at all if there weren't any conspiracy charges? Of course, conspiracy is a requirement under Pinkerton. However, the way this case was charged was in separate accounts. It was a conspiracy charge. There was no enhancement charge as to that count. The enhancements in this case were charged only as to the substantive counts. Now, under Pinkerton's theory— The deal is under Swiney, Swiney occurred in a mandatory guideline pre-Indy, pre-all this factual finding that the judge can't do anymore, right? What are you going to do with Swiney, which provides still the applicable law with respect to how you apply potential enhancements, but you've got to do it in a world in which the judge can't make the findings anymore, but arguably the exact procedure described in Swiney is still the exact, the correct procedure. We think that Swiney is limited to cases in which the government charges and the court is applying an enhancement for the conspiracy itself. Even though, is it just, well, there's nobody there to argue for it, and so therefore you don't charge it? Correct. If we don't argue, correct. We understand, and I think that's what this court just recently in the Donadale decision was pointing to when he said the distinction between the guideline standards applicable in the Swiney context and Pinkerton is not necessarily intuitive, but important. I think the court was directly reaffirming the existence of that distinction and the fact that when a defendant is charged with substantive counts, whether his liability is proved as a matter of principle. The defendant is supposed to, because it's not alleged in the indictment, that the facts that would lead to application of Swiney, then the defendant can stop worrying about them. As to the conspiracy charge, yes, as to the substantive counts, if the counts, whether the counts are proved under Pinkerton theory or not, the defendant is liable under the Pinkerton standard, and that is. . . So it's really not fair to say that both are not in the case, the Swiney issues and the Pinkerton issues. I mean, you've got to figure out procedurally how to deal with them, it seems to me. And your way for dealing with it, it seems to me, is my choice. I charge it in the substantive count, and then I don't charge it in the conspiracy count, and I get the benefit of Pinkerton that way. Is that right? No, to be clear, if we had charged it on the conspiracy count as well, as to that count, we agreed it. I probably need to look back at the indictment and the way it's worded in this particular case, which I will do. In principle, let's assume that we agreed with your adversaries on this point for this case. For the future, could you charge plain old distribution in one count and distribution resulting in death in another count, and then the instructions would say Pinkerton applies to the first of the counts, but you would have to instruct on Swiney with respect to the second of the counts as I laid them out? Would that be a way to solve the problem going forward? I think that could pose some duplicity issues if what is essentially a lesser included and a broader offense are both charged in the same indictment, so that could be an issue that would pose itself, but we really think that as to substantive counts, this Court has never applied, has never cast doubt on the application of Pinkerton. Swiney was a case, again, and perhaps I'm repeating the point I was just making a minute ago. Swiney was a case about conspiracy. There was no distribution charge, and in fact the Court went to some length to distinguish a Fourth Circuit case, Patterson, on the ground that that case involved distribution and aid in abetting distribution. So there is no indication, certainly not the four corners of Swiney, don't compel application of the narrower guideline style, if I may so refer to it, Swiney principle outside of cases where the defendant is charged with conspiracy. To the extent that subsequent developments in the case law have given rise to the possibility that the same conduct may lead to different sentencing ranges, one, depending on how the case is charged, well, that is not unique to this area of law. For instance, 371 conspiracy, the general federal conspiracy statute, has a statutory maximum of five years. One could envision instances in which a defendant is charged with a 371 offense and substantive offenses, and those offenses are proof for a Pinkerton theory. In that case, the sentencing range for the conspiracy offense itself would be limited on the upside to five years, not so for the substantive offenses, even if the proof of the substantive offenses relies on a Pinkerton theory of liability. Just in this case. So this is not, there is some uniqueness to the Swiney holding in this particular context, but the idea the sentencing ranges may vary based on how the government charges conspiracy and related substantive offenses is not unique to this area of law. And I think that to expand Swiney with all the baggage that Swiney comes with into substantive counts would really carve a new exception into Pinkerton that this Court has never recognized. Suppose we were coming out that Swiney really pertained just to the enhancement, not to this underlying conviction, and that was reversible for that reason. Would we have to remand for a full retrial of the count itself, or could we just remand just for application of Swiney to whether or not the enhancement applies? No, I don't think, even in that case, well, for two reasons. First, even if the Court were to reach the legal ruling, as I mentioned before, in this case there would be no basis for reversal because there is overwhelming evidence that in fact both defendants were in the distribution chain. But even aside from that, to the extent that Swiney were applied only to the enhancement, nothing would cast doubt on the validity of the finding under Pinkerton as to the distribution count itself. And because of that, at that point, for instance, it is conceivable that the government might not insist on the enhancement, for instance. I'm not saying that that would be a decision that one could make and there would be no reason to vacate the entire judgment. Did that mean that, to put it bluntly, if we agreed with your adversaries, is there a legal reason that we couldn't couch it as just remanding for a determination on the enhancement? No, there is no legal reason that would prevent you from doing that. We urge you not to get there for any... We have attempted to argue so far. As to the other couple of points, I did want, unless Your Honors have any further questions about the Pinkerton instruction, I would like to touch briefly on the points that my friend on the other side just made with respect to carfentanil and the proof that it was a controlled substance. Whether a substance is a controlled substance is not a question of fact. The question of fact is whether the substance was distributed. The fact that the substance distributed was controlled is a question of law. The Federal Code of Regulation clearly lists carfentanil as a controlled substance. For that reason, we think that claim doesn't have merit. With respect to the sufficiency challenge to Count 3 that Ham interposed based on the purported withdrawal, withdrawal is not an affirmative defense to principal liability. Withdrawal is only an affirmative defense. The Supreme Court made clear in Smith v. United States, but it's an affirmative defense that applies, that cuts off only liability under Pinkerton for related foreseeable, reasonably foreseeable offenses of co-conspirators. For that reason, because in this case Ham was responsible and convicted on that count as a principal, or certainly there was ample evidence to sustain the conviction on that basis, there would be no basis to reverse on that ground. Unless your honors have any further questions about the instructional error or any other issue raised in the case, we would ask the court to affirm the judgment, convictions, and sentences of both defendants. Thank you. Your honor, please. I think those last questions were really pertinent. It seems that the government is attempting to take Swanee and simply make it inapplicable to this case, just based on the idea that Pinkerton has been around forever. But what Pinkerton does is it shapes the outer boundaries of co-conspirator liability. What Swanee did was it held that a more individualized approach regarding foreseeability is required because of the enhanced penalty under 841B1C because of the substantial liberty interest at stake. We're talking about somebody who's gotten life imprisonment here. The same individualized approach Without that, what, he would have had a 20-year maximum? Is that the operative statement, or what would he or could he have? My recollection, your honor, and I don't have the statute in front of me, but my recollection is it's 20, and then if you've got a prior conviction, you're enhanced to 30. I see. Is the next line up. But we're already taking this individualized approach found in the drug quantity context. The Stoddard case out of D.C. has agreed with this court and used Swanee. The court has recently amended the pattern jury instructions on quantity to make these required findings, and this idea that somehow because The Sixth Circuit pattern instructions. Yes, ma'am, the Sixth Circuit, and it talks about Swanee in the commentary. It talks about how Swanee might be in conflict with some other cases, including Robinson, and we're going to follow Swanee because Swanee is the predated decision. Still good law, and it is controlling. Now, the final point I guess I want to make is you really make these charges subject to prosecutorial manipulation when you allow them to not charge the conspiracy for the Carfentanil issue for the distribution resulting in death, and then allow them to use conspiracy principles in instructing the jury on liability for that death. That makes no sense to me whatsoever. One of the things that Judge Reeves held was you can still have a Pinkerton instruction, notwithstanding the fact that there was no conspiracy alleged as to count two and three of the indictment. So you don't need a conspiracy charge, but you get the benefit of the conspiracy law because the very first instruction under Pinkerton is do you find that there was a conspiracy? So what you're allowing the government to do is essentially manipulate when Swanee might apply simply on the basis of how they charge it. Well, what's the... I'm sorry. The same question I ask your adversary is if we agreed with you in general as to the applicability of Swanee, is there a way that they could get the benefit of Pinkerton on the substantive count absent the enhancement? I suggested charging the distribution and then charging distribution causing death separately. He had some qualms about that. Do you have any view on it, or is this just a way of preventing the government from getting Pinkerton liability on any distribution causing death count? Well, I think if there was an actual conspiracy charge, you certainly would get the Pinkerton instruction as it pertains to the death issue. Your Honor... So what, would you charge it as conspiracy causing death? Conspiracy to distribute causing death. All right. I mean, that's how they could have charged it. And why does that make you better or worse off than the way it happened to come out this way? That is, if counts two and three had both read conspiracy to distribute, then what result? Well, I think we'd still be in the same box with respect to Swinee. But where I'm pushing this is that if you're right on Swinee, doesn't that mean that the government can't ever use Pinkerton in a causing death case? It can use modified Pinkerton. I think that's the end result of what Swinee is. What do you call modified Pinkerton? The Pinkerton instruction would have to include language that marries up with what Swinee required. Swinee very clearly required that there has to be a distribution chain in order for this particular penalty to be imposed. That sounds like that obviates Pinkerton because Pinkerton allows you to bring in what your co-conspirators did. Swinee limits it to what you did in a direct line. Yeah, I agree with you. I'm not saying it's right or wrong. I'm just saying logically it seems to me that your position would mean there's no way the government can use Pinkerton in a causing death case. Well, if the government makes the election that they're going to charge somebody with distribution causing death, then maybe they're going to be required to make the election of whether they're going to be able to get a Pinkerton instruction versus a Swinee instruction. What you probably have to do if you were going to try one of these cases . . . I'm looking at it obviously from the trial judge's perspective. Yes, ma'am. What you'd have to do is probably do . . . in counts where causing death is charged, then your finding must be as follows. A different set of findings, but all for the . . . You can ask an additional question. Yeah, right. All for the jury, but just splitting the theories of liability. In other words, trying to give us what might or might not turn out to be a workable system where you've covered Swinee, but you've also given the government to the extent it properly should be applicable the Pinkerton approach. Frankly, I hadn't thought about that before I came up here, but that seems like a reasonable way to . . . Well, I haven't figured it through yet, but it's just been running through my mind that there ought to be some way to properly marry these now that we have so much more jury fact-finding than we did some years ago. I think that's all I had, unless the Court has any other questions. Thank you. I no longer have any self-respect. I did incorporate Mr. Lyon's arguments into Mr. Hamm's brief, since I thought it was efficient and interesting. Regarding the point . . . I mean, because I haven't thought this through either. We've got conspiracy in count one, then we have substantive counts two and three, which also have the extension for the injuries. I don't fully appreciate how under Apprendi, Allain, and Burrage, how you could even still charge Pinkerton because of the conspiracy elements when you've not charged it in the substantive counts that contain this enhancement. So there may even, in fact, be a problem there with proceeding along those grounds. You may, in fact, have to challenge and charge conspiracy to get them hooked on Pinkerton liability under the current laws we have applying Fifth Amendment, Sixth Amendment findings by the jury. Just to also quote on the statute, 841B1C, it says, that breaks out punishments, controlled substances, but also by schedule. So that means whether it's a Schedule I, Schedule II, Schedule III, Schedule IV. Those are elements of the crime because they relate to the punishment. So they were, in fact, charged in the indictment. So if there is a failure of proof on those, it's not something that he's even, I think, subject to ignoring. Possibly you could do a judicial notice by the court, but that wasn't done here either. So we appreciate your time. And by the way, on behalf of myself and Mr. Valentini, we thank you for accommodating our schedules and putting us on this afternoon docket. Thank you very much. I was thinking about why we did that, and I couldn't remember. Thank you very much. Thank you very much for accommodating. We note that both of the defense attorneys were appointed under the Criminal Justice Act. We appreciate very much the service you've given to the court and your advocacy this afternoon. Thank you all. We'll consider the case carefully. This honorable court is now adjourned.